In re WILLIAMS.

Patent Appeal No. 3149.

Court of Customs and Patent Appeals.

June 5, 1933.

Langdon Moore, of Chicago, Ill., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner, refusing to allow the one claim involved in this application on the ground of public use more than two years prior to the filing date of the application involved, said date being March 23, 1928.

The appealed claim reads as follows: "1. In a liquid fuel burner, a draft pipe, a fuel pipe within said draft pipe having a nozzle at the end thereof, electrical means for igniting the fuel issuing from the nozzle including one electrode mounted on the fuel pipe and the other mounted in the draft pipe and insulated from the fuel pipe, the ends of said electrodes extending in advance of the discharge orifice of the nozzle are bent toward each other to provide a spark gap across the front of said nozzle."

Appellant contends that the instant application is a true division of an application filed by him in the Patent Office on December 1, 1924, said application being serial No. 753,167; this application matured into patent No. 1,691,003, issued November 6, 1928.

Both tribunals of the Patent Office held that there was no disclosure in the parent application that would support the claim on appeal, and therefore held that the instant application was not a division of the earlier one; they further held that the record disclosed that the invention in issue had been in public use for more than two years prior to the filing date of the instant application. On this ground the rejection of the claim was based.

The issue here presented is whether there is a disclosure in the parent application of that element of the appealed claim which reads as follows: "One electrode mounted on the fuel pipe and the other mounted in the draft pipe and insulated from the fuel pipe. * * *" Both the tribunals of the Patent Office and appellant have construed this element of the claim to call for one electrode to be insulated from the fuel pipe and the other to be grounded, and we are of the opinion that this is the proper construction to be given to said element.

The drawing forming a part of the instant application appears to be, in the main, the same as figure 5 of the drawings in the earlier application, but there are some differences which will be hereinafter referred to. The electrodes in figure 5 of the original application were given the same numeral, 44; the upper electrode is shown as directly connected to one terminal of the spark coil; the other electrode is mounted in the forward end of the air shaft, adjacent the nozzle, but there is no direct wire connection shown between the rear end of this electrode and the other high tension terminal of the coil, such as is shown between the upper electrode and the coil.

The drawing forming a part of the instant application differs somewhat in details of the ignition system. The upper electrode is given the same numeral that was given to both electrodes in the first application, namely, 44; the lower electrode, however, is designated in the drawing of the instant application as 44a.

It is also of interest to note the difference in the written specifications of the two applications. In the earlier application the specification referred to the ignition system in the following terms:

"So far, nothing has been said relative to the sparking mechanism which comprises the following elements:

"A spark coil is shown at 43, said coil being connected in any suitable manner in the electrical circuit of the burner. Electrodes 44, in connection with the coil 43, are disposed adjacent the discharge end of the burner and directly in the path of the discharging fuel mixture.

"I have described merely a simple jump spark circuit, but it is understood, of course, that any means of producing a spark at the point of discharge could be readily used.

"Included in the electrical circuit to the sparking mechanism is electrical connection 45 running to a knife switch 46 upon the frame 24, said knife switch normally receiving the lever 26 when in its lower or inoperative position."

It will be observed that in the written specification of the first application there is no description of "one electrode mounted on the fuel pipe" and "the other mounted in the draft pipe and insulated from the fuel pipe," limitations of the claim on appeal.

The later application, referring to the ignition system, states: "A spark coil is shown at 43, said coil being connected in any suitable manner in the electrical circuit of the burner. Electrodes 44 and 44ª in connection with the coil 43, are disposed adjacent the discharge end of the burner and directly in the path of the discharging fuel mixture. *The electrodes are both mounted on the fuel feed pipe 21 and electrode 44 is insulated therefrom.*" (Italics ours.)

The italicized portion of this last quotation is new, and of course the implication therein contained is that, while both electrodes are mounted on the fuel feed pipe and electrode 44 is insulated from said pipe, electrode 44ª is *not* insulated therefrom.

The Board of Appeals in its decision states as follows: "The claim calls for electrodes one of which is mounted upon the fuel pipe 21 and the other within the draft pipe 19 with the electrode within the draft pipe insulated from the fuel pipe. Appellant's contention that this drawing supports the claim is based upon the fact that there must be insulation between the electrodes otherwise the device would be inoperative. Both electrodes apparently are mounted on the fuel pipe but we cannot tell from this single view that either necessarily is. The circuit to electrode 44ª is apparently completed through the fuel pipe, but again possibly it may not be. With this uncertainty as to conditions we do not know just where it would be necessary to place insulation. For these reasons it is clear that there may be insulation between the electrodes without employing the structure called for in the claim."

This is, of course, a highly technical art, and there are concurring decisions of the Patent Office tribunals against the claim of appellant that a disclosure is made in his parent application which supports the claim here upon appeal; accordingly the rule applies that this court will reverse the decision of the Board of Appeals only in the event that manifest error is shown. We have given this case most careful study, and it is our view that the decision of the Board is correct. The written specification of the first application nowhere states that one electrode is grounded and the other one insulated, and accordingly we must look to appellant's drawings for this disclosure, if any. The drawing of the first application shows only three terminals of the spark coil. Two are obviously low tension terminals; one high tension terminal is shown as being connected by wire to the upper electrode. The other high tension terminal is not shown at all in the drawing; in order to complete the ignition circuit to the electrodes, it is apparent that there must be some connection from the lower electrode to the remaining high tension terminal of the coil, either by wire or by ground. However, the drawing gives no indication that the lower electrode is grounded to the fuel pipe or other metal; we are unable to say from the drawing that any different condition obtains with regard to the lower electrode in this respect than is the case with the upper one; the return terminal of the coil not being shown, there is no disclosure of the nature of the return circuit from the lower electrode to the spark coil. It may be completed through the ground or it may not be, in so far as the drawing is concerned; this is what the Board of Appeals held, and we are satisfied that its decision is correct.

It is conceded by appellant that the invention claimed was conceived, reduced to practice, and placed in public use prior to March 1, 1924. As hereinbefore stated, the instant application was filed in the Patent Office on March 23, 1928, more than four years after the alleged invention was in public use. Therefore appellant is barred under the statute from receiving a patent upon the invention claimed.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.